UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN CERVANTES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 1:16-cv-11080 |
| ARDAGH GROUP, | ) ) Judge Ronald A. Guzman |
| Defendant. | ) ) Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S RESPONSE
TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS
AND PLAINTIFF'S COUNTER-STATEMENT OF UNDISPUTED FACTS**

**I.   Introduction**

Plaintiff has filed both a Statement of Additional Facts and a Response to Ardagh's Statement of Undisputed Facts that fail to comply with Local Rule 56.1.  Local Rule 56.1(b)(3) requires that an opposing party file a "concise response to the movant's statement [of material facts]" including both a response to the moving party's statement and statement of additional facts of "not more than 40" paragraphs.  Each of these submissions must be supported by "specific references" to supporting evidentiary materials. N.D. Ill. Local Rule 56.1(b)(3)(B). Additional facts should be limited to those which are actually material to the motion for summary judgment and should not be argumentative.  As explained below, Plaintiff's submissions violate every one of these rules.  Plaintiff's submissions should be stricken and all facts in Ardagh's Statement of Undisputed Facts should be deemed admitted. *See Gizaw v. Illinois Dep't of Public Aid*, No. 02-C-5862, 2004 WL 421958, at *4 (N.D. Ill. Feb. 13, 2004); *Buttron v. Sheehan*, No. 00 c 4451, 2003 WL 21801222, at *1-7 (N.D. Ill. Aug. 4, 2003) (refusing to consider any statements made by non-movant for failure to comply with Local Rule 56.1).

## II. The Defects In Plaintiff's Responses To Ardagh's Statement of Uncontroverted Facts

### A. Plaintiff "Denies In Part" Numerous Uncontroverted Facts For the Sole Purpose of Including Impermissible Legal Argument

Plaintiff responded to a number of Paragraphs in Ardagh's Statements by stating "Disputed in Part," without specifically referencing the portion of the Paragraph or the facts that he is disputing. In each of these responses, Plaintiff actually admits to the fact that was included in Ardagh's Statement, but adds extraneous arguments or legal conclusions. For example, Plaintiff has alleged that he received numerous disciplinary write ups that were issued because of his national origin. In Paragraph 5 of Ardagh's Statement of Undisputed Facts, Ardagh simply states: "During his time in the maintenance role, Plaintiff was written up seven times for poor job performance." Paragraphs 6-13 merely itemize those write ups and the date they were issued, in a non-argumentative fashion. (*See e.g.,* paragraph 6: "On October 31, 2006, Plaintiff received a verbal warning for installing a piece of equipment incorrectly."). In response to each of these paragraphs, Plaintiff responds:

> These write-ups do exist, however, they were "wrongly" conducted as it pertains to retaliation and discrimination since Plaintiff has been working for Defendant. There have been many occasions that other African-American employees are doing the same wrongful conduct but their conduct is ignored and under less scrutiny but all non-African-American employees' conduct is heavily scrutinized.

More than half of Plaintiff's Response incorporate this inappropriate tactic. (*See* Pl. Resp. at ¶¶ 5-13, 16-17, 22-23, 25-26, 28(a), and 30). Each of these responses should be stricken and the facts admitted. *Gizaw v. Illinois Dep't of Public Aid*, No. 02-C-5862, 2004 WL 421958, at *4 (N.D. Ill. Feb. 13, 2004) (admonishing plaintiff for "wasting the court's time and the Defendants' time spent sifting through her poorly written 56.1 response and statement of additional facts and wasting the court's time in addressing Defendants' meritorious motions to strike" where plaintiff's statement of facts and responses were riddled with legal argument and conclusions);

*Menasha Corp. v. News American Marketing In-Store, Inc.*, 238 F.Supp. 2d 1024, 1029 (N.D. Ill. 2003) ("The court will disregard all argumentative, conclusory, unsupported, or otherwise non-confirming portions of [56.1 statements.]").

### B. Plaintiff Cites To Evidence That Does Not Support His Denials

The majority of Plaintiff's denials, including his responses to Paragraphs 5-23, 27, 28(b)-(e), and 29-32, are not actually supported by the evidence cited by Plaintiff, in violation L.R. 56.1(b)(3)(B). For example, Paragraph 32 of Ardagh's Statement states "None of the individuals involved in reporting Plaintiff's conduct, or making the decision to demote him, were aware of Plaintiff's prior EEOC charge," Plaintiff states "Disputed," citing to pages 65 and 66 of Plaintiff's deposition transcript. (Pl. Resp. at ¶ 32.) But the testimony on these pages states exactly the opposite, and actually supports the accuracy of Ardagh's statement:

> Q. And I think you admitted that neither Mr. Spells nor Ms. Stewart were aware of this EEOC charge. Is that correct?
> A. Yes, because it was -- at that time they weren't -- they weren't -- they didn't work for the company.
> Q. And Mr. Jones also didn't work for the company at that time; is that right?
> A. No, he didn't.
> Q. "No, he didn't"?
> A. "No, he didn't."
> Q. And you don't have any reason to believe that he was aware of the charges back in 1998; is that correct?
> A. No, not -- not these charges.

(Supp. App. Ex. A, Cervantes Dep. pp. 65:19-66:9.) *Basta v. Am. Hotel Register Co.*, No. 10-C-4003, 2012 WL 88187, at *2 (N.D. Ill. Jan. 11, 2012) (striking plaintiff's responses to defendant's Local Rule 56.1 statement when "the evidence cited to support them fail[ed] to do so"); *Chicago United Indus., Ltd. v. City of Chicago*, 685 F. Supp. 2d 791, 794 n. 4 (N.D. Ill. 2010), reconsideration denied, 739 F. Supp. 2d 1043 (N.D. Ill. 2010) ("[W]here a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted.") and *aff'd*, 669 F. 3d 847 (7th Cir. 2012).

### C. Plaintiff's Denials Conflict With His Counter-Statement of Facts

In some instances, Plaintiff's denials are not only unsupported by the record citation, but also directly controverted by his own Counter-Statement ("Pl. Counter-SUF"). For example, Paragraph 24 of Ardagh's Statement of Material Facts ("Def. SUF") states as follows:

> Stewart subsequently located Plaintiff in the facility to find out why he was not answering radio calls. Plaintiff advised Stewart that he did not have his radio and claimed that he was not there to respond to calls on the radio. Instead, Plaintiff advised Stewart that he was only staying clocked in to hold a flashlight for his father, who was working late, and refused to accept any further assignments.

(Def. SUF at ¶ 24 (citations omitted).) While Plaintiff denies this statement, his Counter-Statement includes the following:

> After at least 30 more minutes, Trebble returned and saw that Cervantes remained helping his father. Trebble asked for Cervantes to answer the radio calls, but he again informed her that he did not agree to work a second shift and that he was only staying after his shift concluded in order to assist his father.
>
> Trebble then informed Cervantes—for the first time—that if he would not answer calls, he would need to go home.

(Pl. Counter-SUF at ¶¶ 44-45 (citations omitted).) There is no material difference between these statements, and therefore, Plaintiff's blanket denial of Ardagh's statement is inexplicable. *Buttron* at *5 (N.D. Ill. Aug. 4, 2003) (striking denials where such denial is contradicted by plaintiff's own testimony).

### III. The Defects In Plaintiff's Counter-Statement Of Facts

#### A. Plaintiff Has Exceeded The Local Limit For Numbered Paragraphs

Local Rule 56.1(b)(3)(C) permits a non-movant's response to moving party's Statement of Uncontroverted Facts to include additional affirmative statements of facts that require the denial of summary judgment. However, "[a]bsent prior leave of Court, a party responding to summary judgment may not file more than 40 separately-numbered statements of additional facts." *Id.* Plaintiff's Counter-Statement of Undisputed Facts contains **_82_** paragraphs, but he

never sought leave of court. This is particularly troubling when one considers that Ardagh submitted only 32 paragraphs, and a 9-page memorandum of law. One of the reasons Plaintiff went so far over the limit is because Plaintiff included numerous facts that simply have nothing to do with this dispute. For example, Plaintiff has included 7 paragraphs of "facts" related to Ardagh's failure to transfer Plaintiff to straight dayshift. in 2012. However, Plaintiff clarified at his deposition his failure to promote claim has nothing to do with this 2012 event.

> Q. You're accusing the company of denying your request to be placed on straight day shift. . . . Is your accusation what transpired in 2012—
> A. No…. No. It's a total different event.

(First App. Ex. C, Cervantes Dep. pp. 79:24-80:6.) Similarly, although there are no claims of disability discrimination in this case, Plaintiff has included multiple paragraphs discussing his high blood pressure, hospitalization and inability to drive to and from work. (Pl. Counter-SUF at ¶¶ 24-27.) Additionally, Plaintiff devotes multiple paragraphs to damages, when Ardagh's motion for summary judgment challenges only liability. (Pl. Counter-SUF at ¶¶ 72 and 80-82.)

**B. Plaintiff Supported His Counter Designations With Unsworn & Inadmissible Testimony**

Plaintiff has improperly supported nearly a dozen paragraphs in his Counter-Statement of the facts alleged in his Counter-Statement of Uncontroverted Facts by citing to his own unverified complaint. (Pl. Counter-SUF at ¶¶ 1-3, 6-8, 23-25, 80.) *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (explaining that a nonmovant cannot defeat summary judgment simply by resting on her pleadings and must instead point to evidence in the record to support her claims). Plaintiff has also submitted his own unsigned affidavit which contains a conclusory statement that the African-Americans in the factory receive an "unfair advantage" and receive more favorable treatment than non-African Americans. Both the form and substance of this affidavit is improper.

*First*, 28 U.S.C. § 1746 provides that unsworn declarations must be "subscribed by [the declarant], as true under penalty of perjury[.]" Here, Plaintiff's affidavit is not signed, and therefore, not subscribed as true under penalty of perjury. *Second*, Plaintiff's statements do not comport with Fed. R. Civ. P. 56(c)(4), which requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Plaintiff has already admitted that he does not "have personal knowledge" about African Americans being permitted to waste time. Plaintiff had merely "heard [about] it." (Supp. App., Ex. A, Cervantes Tr. p. 145:8-22.) *See Sheppard v. Vill. of Glendale Heights*, No. 11 C 01044, 2014 WL 1227025, at *4 (N.D. Ill. Mar. 25, 2014) (granting summary judgment for employer after plaintiff failed to "offer evidence to support the assertion that she observed enough of these matters herself so as to have the requisite personal knowledge to testify competently" as to employer's treatment of comparable employees); *see also Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (affirming summary judgment and upholding district court's decision to strike and disregard portions of plaintiff's affidavit in which plaintiff made sweeping statements about comparable employees of which he could not have had personal knowledge).

### C. Plaintiff's Record Designations Don't Actually Support His "Facts"

As with the Responses to Ardagh's Statement of Uncontroverted Fact, there are multiple occasions where Plaintiff alleges facts that are simply not supported by the cited evidence. (Pl. Counter-SUF at ¶¶ 4, 11-12, 14-16, 19, 21-22, 25-28, 32-35, 37-38, 43, 45-46, 48-49, 51, 53, 56-57, 59-64, 66, 68, 70-72, 74-77, 79-80, and 82.) For instance, Paragraph 14 of Plaintiff's Counter-Statement states:

> The most egregious example of disparate treatment by Ardagh was the work history of Lawrence Parker. Parker, who is African-American, has been

> terminated 3 times, including once for physically assaulting a supervisor. Yet, Parker remains with the company in his same job and at the same salary – and has never been demoted. (Rubenstein Declaration, Exhibit B, Waldrop, 15:10-25 to 16:1-24).

The testimony that is cited to support this, which is later quoted verbatim in Plaintiff's Counter-Statement, discusses an incident where Parker was given a verbal warning for leaving the facility and failed to clock out. There is no mention of **any** termination, physical assault, or Parker's current job or status with the company in this section of testimony. Plaintiff goes forward to cite to this testimony in three other places to support arguments, legal conclusions, and facts that are nowhere to be found in the record. (*See* Pl. Counter-SUF at ¶¶ 15, 16, and 18.) Plaintiff's failure to cite to portions of the record that support his version of the facts should result in the court disregarding his Counter-Statement altogether. *See Menasha Corp. v. News American Marketing, Inc.*, 238 F.Supp. 2d 1024, 1029 (N.D. Ill. 2003) ("The court will disregard all argumentative, conclusory, unsupported, or otherwise non-confirming portions of [56.1 statements]").

### D. Plaintiff's "Factual Statement" Is Replete With Legal Argument

The statement of fact is not the proper place to make legal arguments and conclusions. Yet, that is precisely what Cervantes has done in many instances. For example, Plaintiff's Counter-Statement includes the following statements:

- Yet, because of his race, the decision makers at the company refused to promote him. The company would come up with brand new rules to disqualify him as a pretext for not promoting him. (*Id.* at ¶ 8.)

- These evaluations were completely biased because they were based on subjectivity as opposed to objectivity. (Pl. Counter-Statement at ¶ 21.)

- Clearly, the discrimination based on retaliation is linked to race as well. (*Id.* at ¶ 23.)

- Based on the above, it is clear that Cervantes was not insubordinate; rather, this allegation is merely a pretext for underlying racial discrimination. (*Id.* at ¶ 51.)

- It is clear based on these actions that Cervantes was unlawfully and unfairly singled out for no other reason other than his race. (*Id.* at ¶ 74.)

These argumentative, legal conclusions "ha[ve] no place in a statement of material facts." *Gizaw*, 2004 WL 421958 * at 4 (Striking as argumentative, Rule 56 Statement that plaintiff's supervisors "treat[ed] her with disrespect and hostility because of [her] national origin). Plaintiff's Rule 56 Statement is replete with similar examples. (Pl. Counter-SUF at ¶¶ 9-14, 18-19, 22, 34-35, 52-53, 55-56, 60, 62-63, 65-66, 68, 70, 71, 75, and 77,-81.)

### E. Plaintiff Repeatedly Contradicts His Sworn Testimony Without Explanation

Plaintiff contradicts his own deposition in multiple places without any attempt to explain of the clear discrepancies. For example, in Paragraph 23 of his Counter Statement, Cervantes states that "he had previously complained to his superiors of discrimination and harassment as a result of his ethnic background, which he is Hispanic." However, at his deposition, Plaintiff admitted that the only "complaints" he raised beyond the 1998 EEOC charge were grievances that his union filed on his behalf contesting prior disciplinary warning letters. (First App. Ex. C, Cervantes Dep. pp. 67:8-68:6). He admitted that these grievances contained "no reference to discrimination." (Supp. App. Ex. A, Cervantes Dep. p. 73:14-24). He further admitted that he never communicated any concerns about discrimination directly to anyone at Ardagh, and has no idea if the union ever orally communicated such belief to the Company on his behalf:

Q. What other complaints of discrimination did you raise to managers at Ardagh?
A. The only one, really, that I have -- I spoke when -- when this would happen would only be as the -- as the union president. And according to him, most of these, he said, "Back up; I'll take care of it," you know; "You don't have to go grievance. I'll take care of it."

>Q. Okay. So when you say that you raised concerns about discrimination, you didn't raise them to the company? You raised them to the union, who you believed was taking care of addressing the discipline on your behalf?
>
>* * *
>
>A. Yes. Yes.
>Q. Okay. And you don't know whether the union president communicated to Ardagh that you perceived that any of these written warnings were the product of discrimination?
>A. I did ask him, you know, what went on, and he says, "I took care of it."
>Q. All he said to you was "I took care of it"?
>A. Yeah. Yeah. "I took care of it."
>Q. Okay. So you don't know --
>A. I don't know.

(Supp. App. Ex. A, Cervantes Dep. pp. 73:22-74:24.)

Similarly, at Paragraph 48 of his Counter Statement, Plaintiff states, "It is also clear that once Trebble asked Cervantes to leave the floor, that he followed her command and agreed to do so." But that allegation is directly at odds with Plaintiff's testimony:

>Q. Did you leave when Ms. Stewart told you to go home?
>A. No, because -- because I asked her who -- I said, "I only got a ride -- the ride is my dad."

(Supp. App. Ex. A, Cervantes Tr. p. 25:13-16). Plaintiff may not create a genuine issue of material fact by contradicting his prior deposition testimony. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions").

**IV. Conclusion**

Plaintiff's Response to Ardagh's Statement of Undisputed Facts makes zero effort to comply with Local Rule 56. Rather, Plaintiff has tried to bury Ardagh and the Court in unsubstantiated allegations hoping to confuse the issues and prevent summary judgment. However, "'[j]udges are not like pigs, hunting for truffles buried' in the record," and "a lawsuit is not a game of hunt the peanut." *Buttron*, 2003, WL 21801222, quoting *United States v. Dunkel*, 927 F.2d 955, 956

<u>**DEFENDANT'S MOTION TO STRIKE**</u>                                                                                          11

(7th Cir. 1991) & *Greer v. Board of Educ*. 267 F.3d 723, 727 (7th Cir. 2001). Plaintiff's Response and Counter-Statement should be stricken in their entirety.

Furthermore, Plaintiff's submission caused Ardagh to spend countless hours responding to improper and often simply untruthful statements. Wading thru this submission "multiplie[d] the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927; *see e.g.*, *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016) (imposing sanctions where plaintiff filed affidavit that was contradictory to his sworn testimony and was signed one day prior to opposition to motion for summary judgment); *E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 658 (W.D. Wash. 2012) (finding sanctions appropriate where defendant submitted voluminous telephone records that were irrelevant to the underlying issues); *Herzfeld & Stern v. Blair*, 769 F.2d 645, 647 (10th Cir. 1985) (finding sanctions "necessary" where plaintiff's counsel appealed the judgment of the trial court citing references to the record to support statements that were contrary to the actual record evidence); *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir. 1986) (granting sanctions where plaintiffs brought frivolous appeal that mischaracterized plaintiffs' affidavits, cited decisions that were overturned on appeal, and failed to consider controlling precedent). Therefore, Ardagh further requests that Plaintiff's counsel be required to pay Ardagh's fees and costs associated with preparing this Motion and the Response the Counter Statement of Facts.

Respectfully submitted,

September 12, 2017

                                        **ARDAGH GLASS INC.**

                                        By: *s/ Rachel Cowen*
                                            Rachel Cowen-06217360
                                            rachel.cowen@dlapiper.com

                                Sabreena El-Amin-6318445
                                Sabreena.el-amin@dlapiper.com
                                DLA Piper LLP (US)
                                444 W. Lake St., Suite 900
                                Chicago, Illinois 60606

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

      Sabreena El-Amin, an attorney, certifies that on September 12, 2017, she caused a copy of the foregoing MOTION TO STRIKE to be filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to the following parties:

David Rubenstein, Esq.
Rubenstein Business Law
30 S. Wacker Drive, 22nd Flr.
Chicago, IL 60606

*Attorney for Plaintiff*

                                                                                              *s/ Sabreena El-Amin*
                                                                                              Sabreena El-Amin